JDN

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roger Wayne Preayer, | No. CV 15-00069-PHX-DGC (DKD) |
| Plaintiff, | |
| vs. | **ORDER** |
| Charles L. Ryan, et al. | |
| Defendants. | |

Plaintiff Roger Wayne Preayer brought this pro se civil rights action under 42 U.S.C. § 1983 against multiple Arizona Department of Corrections (ADC) employees: (1) Deputy Warden D. Schuster; (2) Lieutenant Cheryl Malysa; (3) Corrections Officer (CO) Maria Piller; (4) CO II Jaudiel Barajas; (5) CO II Eduardo Arreola; and (6) Nurse Practitioner Carey Tucker. (Doc. 61).[1] Before the Court is Tucker's Motion for Summary Judgment for failure to exhaust administrative remedies, to which Arreola and Barajas filed a Joinder. (Docs. 92, 107).[2] Preayer opposes Tucker's Motion and objects to Arreola and Barajas' Joinder. (Docs. 99, 108.) The Court will deny the Joinder motion as moot and grant Tucker's Motion for Summary Judgment.

---

[1] Preayer is currently housed at the Red Rock Correctional Center in Eloy, Arizona. (Doc. 21.)

[2] Also before the Court is the parties' joint motion requesting a settlement conference and notifying the Court of Preayer's request for appointment of counsel.Doc. 110). This motion will be addressed in a separate Order.

**I.     Background.**

In Count I of his First Amended Complaint, Preayer alleges that he was subject to unconstitutional conditions of confinement from January through May 2014, when he was housed in an isolation cell at the Arizona State Prison Complex (ASPC)-Lewis, Morey Unit. (Doc. 61 at 5–19.) Preayer alleges that Barajas, Arreola, Malysa, Schuster, and Pillar were all aware of his cell conditions and failed to remedy the situation. (*Id.*)

In Count II, Preayer alleges deliberate indifference to his serious medical need. (*Id.* at 20–24.) Preayer states that he has chronic high blood pressure, for which he has taken medication since 2002, but when he saw Tucker on February 26, 2014, Tucker cancelled Preayer's prescription. (*Id.* at 20.) Preayer alleges that he saw Tucker again a month later, on March 28, 2014, at which time he complained that since Tucker discontinued his medication, he had experienced dizziness, extreme pain, and disorientation. (*Id.*) Preayer requested reinstatement of the blood pressure medication. (*Id.*) According to Preayer, Tucker said Preayer no longer required medication, and he refused to issue a new prescription. (*Id.*) The next day, Preayer became light-headed and dizzy, and he tried summoning help via the emergency call button in his cell and by waving at the camera in his cell, but no one responded. (*Id.* at 20–21.) Preayer lost consciousness and was later found in a puddle of blood. (*Id.* at 21.) When medical arrived, Preayer's blood pressure was 184/108, and he was taken to the medical unit for treatment, after which his blood pressure medication was reinstated. (*Id.*)

In its February 9, 2016 Screening Order, the Court directed Schuster, Malysa, Piller, Barajas, and Arreola to answer Count I, and Tucker, Barajas, and Arreola to answer Count II. (Doc. 65 at 6.)

On June 15, 2016, Tucker filed his Motion for Summary Judgment, which pertains only to the claim in Count II. (Doc. 92.) Tucker argues that he is entitled to summary

judgment on Count II because Preayer failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  (*Id.*)[3]

On August 22, 2016, after the Motion for Summary Judgment was fully briefed, Arreola and Barajas filed a Joinder to Tucker's Motion.  (Doc. 107.)  They incorporate Tucker's argument and his Statement of Facts, and seek summary judgment as to the Count II claim against them.  (*Id.*)

Preayer objects to the Joinder motion.  (Doc. 108).  Preayer asserts that although the Court's Screening Order directed Arreola and Barajas to answer Count II, he did not name these two Defendants in Count II.  (*Id.* at 2.)  Preayer states that he named Arreola and Barajas only in Count I, and he indicates that the Court erred when it added these two Defendants to Count II.  (*Id.*)  Preayer concludes that because Arreola and Barajas are not Defendants in Count II, their Joinder is moot.  (*Id.* at 3.)

**II.   Joinder.**

In light of Preayer's clarification that he did not intend Arreola or Barajas to be named as Defendants in Count II, the Court finds that their Joinder motion is moot, and it will be denied.  Arreola and Barajas are not Defendants in Count II.

**III.   Summary Judgment Standard.**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

---

[3] The Court issued an Order with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which notified Preayer of the requirements of Federal Rule of Civil Procedure 56.  (Doc. 95.)

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968), but it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  In its analysis, the court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

**IV. Exhaustion.**

**A.    Legal Standard.**

Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005).  The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002),

regardless of the type of relief offered through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001). If feasible, the issue of exhaustion should be decided at the beginning of litigation. *Albino v. Baca*, 747 F.3d 1162, 1169, 1171 (9th Cir. 2014).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Id.* at 1172; *see Brown*, 422 F.3d at 936–37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170–71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**B.     ADC Grievance Procedure.**

The parties dispute which version of the ADC grievance policy governed at the time Preayer's complaint arose. Tucker submits a copy of ADC Department Order (DO) 802, *Inmate Grievance Procedure*, dated 2012, and states that this was the policy in effect when Preayer's complaint arose in 2014. (Doc. 93, Ex. B; Doc. 104 at 4.) This version of DO 802 sets forth a multi-step process for nonmedical grievances and a separate multi-step process for medical grievances. (Doc. 93, Ex. B, DO 802.02–802.07.) Preayer avers that he was he never informed that there was any difference between

nonmedical and medical grievances, and was familiar only with a single, standard grievance process. (Doc. 100, Preayer's Statement of Facts ¶ 1; Doc. 102, Preayer Decl. ¶ 9.) Preayer submits a copy of an earlier version of the ADC grievance policy, dated 2003, and indicates that he followed this procedure when grieving his complaint. (Doc. 102, Ex. B.)

There is no evidence showing when Preayer last received any type of orientation on the grievance procedure or when he was provided an updated version of DO 802. The Court must take as true Preayer's averments that he was never informed of any distinction between nonmedical and medical grievances, and that he believed he had to comply with the standard grievance procedure as set forth in his 2003 copy of DO 802. Accordingly, the 2003 version of DO 802 was the remedy available to Preayer at the time, and whether he exhausted remedies will be analyzed under that procedure.[4]

Preayer's version of DO 802 sets forth the following steps: (1) the inmate must attempt to resolve the complaint informally; (2) the inmate may submit a formal grievance to the unit CO III, and the Grievance Coordinator has 20 days to respond; (3) the inmate may then file an appeal to the Warden/Deputy Warden, who must respond within 20 days; and (4) the inmate may file an appeal to the Director. (Doc. 102, Ex. B, DO 802.09 §§ 1.1–1.4 (Doc. 102 at 4–5).)

### C. Preayer's Grievance.

On March 15, 2014, Preayer submitted a formal grievance addressed to the Grievance Coordinator. (*Id.*, Ex. A, Preayer Decl. ¶ 4 & Ex. C (Doc. 102 at 1, 7–8).) In this formal grievance, Preayer complained about the length of time he had been housed in the isolation cell and the officers' disregard of isolation inmates – failing to respond to the emergency call button, to regularly check the isolation cells, or to timely deliver meals. (Doc. 102 at 7–8.) Preayer wrote that he has extreme health needs and does not feel safe because officers disregard inmates in the isolation cells, even when the

---

[4] The Court notes that the exhaustion determination in this case would be effectively the same whether analyzed under the 2003 or the 2012 version of DO 802.

1  emergency call button is pushed. (*Id.* at 7.) Preayer did not mention his blood pressure
2  medication or Tucker's actions. (*Id.* at 7-8.) There was no response to this formal
3  grievance within 20 days.

4  On April 24, 2014, Preayer submitted an appeal to the Deputy Warden, in which
5  he stated that he had received no response to his March 15, 2014 formal grievance. (*Id.*
6  at 10–11.) Preayer wrote that officers were ignoring the isolation cells, failing to respond
7  to the emergency call button, and serving meals late or missing meals. (*Id.* at 10.) He
8  also raised, for the first time in this grievance process, the blood pressure issue. He stated
9  he was seen by Tucker on March 28, 2014, that Tucker had discontinued his blood
10 pressure medication the month prior, and that, on March 29, 2014, he fell unconscious
11 after trying for an hour to get assistance from officers. (*Id.* at 11.)

12 On May 5, 2014, Preayer received an Inmate Grievance Response from the
13 Deputy Warden. (*Id.* at 13.) The Response, dated May 1, 2014, stated that Preayer's
14 grievance complained that inmates housed in the isolation cells are rarely checked on, are
15 not fed at an appropriate time, and are housed in isolation for too long. (*Id.*). The
16 Response agreed that operation of the isolation cell area needed to be improved and
17 officials were currently putting a system in place to better manage the operation of that
18 area. (*Id.*) The Response did not mention the blood pressure issue raised for the first
19 time in Preayer's appeal.

20 On May 7, 2014, Preayer submitted a long, detailed appeal to the ADC Director
21 complaining about his cell conditions, officers' failure to respond to inmate needs,
22 Tucker's discontinuation of medication and the resulting incident on March 29, 2014, and
23 officers' failure to timely respond to his grievances. (*Id.* at 15–20.)

24 On July 15, 2014, the Warden issued an Inmate Grievance Appeal Response,
25 stating that he received the appeal complaining that inmates in the isolation cell are not
26 properly treated and that he concurred with the Deputy Warden's response. (*Id.* at 22.)
27 The Warden added that Preayer could appeal to the Director within 5 days. (*Id.*) The
28

Warden did not respond to Preayer's statements regarding discontinuation of his blood pressure medication or passing out on March 29, 2014. (*Id.*)

### D. Discussion

Preayer completed each step of the grievance procedure, including a final appeal to the Director on May 7, 2014. Therefore, the Warden's July 15, 2014 response stating that Preayer could appeal to the Director within 5 days is of no moment.

But Preayer's grievance only supports exhaustion of his complaint about the officers' disregard of isolation inmates. Preayer's March 15, 2014 grievance made no mention of Tucker or the discontinuation of his blood pressure medication. Although a grievance need only "alert the prison to a problem," *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009), and it does not even have to identify the defendants to be named later in a lawsuit, *Jones*, 549 U.S. at 218–19, Preayer's formal grievance failed to satisfy even this minimal notice requirement. It says nothing about his blood pressure, his blood pressure medication, or the alleged discontinuation of that medication. (Doc. 102 at 7–8.)

The version of DO 802 on which Preayer relied specifically states that an inmate may raise only one complaint per grievance. (*Id.* at 4, DO 802.09 § 1.1.5.) The first mention Preayer made of blood pressure medication was in the April 24, 2014 appeal, and that appeal also addressed Preayer's original complaint about the guards' disregard of prisoners in the isolation units. (*Id.* at 11.)

The Supreme Court has held that a prisoner must comply with the procedural rules set out in the prison's grievance policy. *Woodford*, 548 U.S. at 90–91. As the Court explained, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The one-complaint-per-grievance requirement can be waived by prison officials if they address the merits of multiple complaints in one grievance. *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (a prisoner exhausts available remedies if prison officials ignore a procedural problem and decide a grievance on the merits). But here, there was no such waiver.

Officials addressed only Preayer's original complaints about cell conditions, officers' treatment of inmates, and meals. (Doc. 102 at 13, 22.)

In sum, Preayer failed to comply with applicable grievance procedures. He failed to submit a grievance regarding his blood pressure medication, and, when he did raise that issue in the appeal of a different grievance, he violated the procedural requirement of one complaint per grievance. Preayer fails to present any evidence to show that he was prevented from initiating a grievance about the discontinuation of his medication or that remedies for this complaint were otherwise unavailable. *See Albino*, 747 F.3d at 1172. Because Preayer failed to properly exhaust remedies for his claim against Tucker, Tucker's Motion will be granted and this claim will be dismissed without prejudice.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant Tucker's Motion for Summary Judgment and Defendants Arreola and Barajas' Joinder motion. (Docs. 92, 107.)

(2) Defendants Arreola and Barajas' Joinder motion (Doc. 107) is **denied as moot**.

(3) Defendant Tucker's Motion for Summary Judgment (Doc. 92) is **granted.** The claim against Tucker in Count II is dismissed without prejudice for failure to exhaust administrative remedies.

(4) Tucker is dismissed as a Defendant.

Dated this 3rd day of October, 2016.

*David G. Campbell*
United States District Judge